

**U.S. Department of Justice**

*Andrew E. Lelling*
*United States Attorney*
*District of Massachusetts*

---

Main Reception: (617) 748-3100

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

May 17, 2019

Stylianus Sinnis
Office of the Federal Public Defender
51 Sleeper Street
Boston, MA 02210

      RE:    *United States v. Franklin Freddy Meave Vazquez*
              Crim. No. 18-10428-ADB

Dear Counsel:

      We write in response to your discovery letter dated April 12, 2019, requesting the following 34 categories of documents:

1. To date, you have produced, by my count, a single FBI 302 (also known as FD 302). *See* Bates 926 regarding search of the Billy Haver. It is incomprehensible that an investigation into an alleged homicide would result in only a single 302 that falls under the Federal and Local rules pertaining to discovery. For example, you have not produced any 302s regarding the interrogation of Mr. Meave Vazquez or his alleged waiver of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966). No 302s have been produced regarding the collection of evidence, the chain of custody of the collected evidence, or the results of any forensic testing. There are also no FBI 302s regarding witness interviews. Counsel understands that the government is not technically obligated to produce *Jencks* materials until a date closer to trial; however, statements of witnesses could only be covered by *Jencks* if they concern actual government trial witnesses *and* if the materials were "adopted" by the witnesses or are "substantially verbatim recitals" of their statements." 18 U.S.C. §3500(e). It seems unlikely that this would apply to all witness statements in the Government's possession. Moreover, production of legitimate *Jencks* material on the eve of trial will inevitably result in a request to continue the trial and result in a delay of the final adjudication of this matter.  Accordingly, we request the production of all 302 reports concerning interviews of witnesses, collection of evidence, testing of evidence, results of such testing and any other reports related to this case. Without limiting this request a few examples where one would expect a report to be prepared include:  Bates 404 specifically references a "separate FD 302"; Bates 403 Agents Comcowich and Galietta did a preliminary survey of the Billy Haver; Bates 404 references the fact that Mr. Meave Vazquez was detained while being transported back to shore; Bates 407 reflects that an Alternative Light Source was used during examination

of certain items on the Billy Haver, Bates 408 reflects a presumptive hemastix test was done on a wall in Room H. Yet, there are no reports produced regarding any of these events. Please provide all FD 302s. This request includes a request for the notes of the agents involved in preparing the reports.

**RESPONSE:**

    a. The government objects to the defendant's request for early *Jencks*.

    b. The government agrees to produce the FD 302 concerning the September 24, 2018 interview of the defendant at the Brookline Police Department. The government has already produced the audio-video file of that interview, an unofficial transcript of the interview, and defendant's signed *Miranda* waiver. *See* MEAVE 931-947.

    c. The government agrees to produce FD 302s addressing the collection and testing of evidence. These include defendant's specific requests above except there is no FD 302 documenting the use of an alternate light source to examine the ice hold, and there is no FD 302 documenting the Presumptive Hemastix test, which is a field test that does not result in a report.

2. Akin to Request Number 1, to date we have received only two Coast Guard Investigative Service Reports regarding the investigation into the alleged homicide on the Billy Haver. *See* Bates Numbers 1656-1658 and Bates Numbers 1659-1663. It is our understanding that the investigation was a joint investigation between the FBI and Coast Guard Investigative Services (CGIS). We request all reports prepared by CGIS in connection with their investigation in this case. As a basis for this request, we incorporate the reasons detailed in Request Number 1.

**RESPONSE:** The government incorporates its objections in its response to Request No. 1. The government agrees to produce CGIS reports addressing the collection and testing of evidence.

3. Information required to be produced under Local Rule 116.2. In your discovery letter dated December 20, 2018 you identify certain individuals who provided the government with potentially exculpatory evidence. *See* Page 5 of Government's Discovery Letter dated December 20, 2018. In your letter you summarize the exculpatory evidence attributable to each witness. This does not meet your obligations under Local Rule 116.2. We request copies of all reports, grand jury testimony, and notes pertaining to the statements identified in paragraph G(1) of your letter. I note that you did provide us with a report regarding potentially exculpatory information provided by TS (Bates 1656 – 1658) as referenced in paragraph G(1)(f) of your discovery letter; however, you failed to produce similar reports or grand jury testimony for the exculpatory evidence outlined in paragraph G(1)(a-e) and (g).

**RESPONSE:** The government objects to this request and notes that it has complied with Local Rule 116.2.

4. In your December 20, 2018 letter, you state that a crewmember was granted a deferral of action on removal by the Immigration and Customs Enforcement agency at the request of the FBI. Please provide all documents pertaining to the deferral including correspondence, e-mails or other documents in which the request for a deferral were discussed. Also, please provide documents from ICE pertaining to the deferral.

   **RESPONSE:** The government objects to this request.

5. The A-file for the crewmember referenced in Request Number 4.

   **RESPONSE:** The government objects to this request.

6. You produced documents from Globalstar (Bates 2236-2238). We are missing pages 2-4. Please provide those.

   **RESPONSE:** The government was faxed 5 pages of records, which it will produce. The first page is the fax cover sheet. The second page is MEAVE 2236. The government inadvertently omitted the third page. The fourth and fifth pages are MEAVE 2237-2238.

7. You produced documents regarding RH receiving medical treatment on the Mein Sheiff (Bates 1659). It references a DVD of X-Ray images. We did not receive a copy of the DVD. Please provide us with a copy.

   **RESPONSE:** The government will produce these records.

8. In addition, please provide us with all medical records for RH and JS for care/treatment received on the Mein Sheiff. Currently, you have not produced any such records. The existence of these records is documented in Bates 1659 and 1682.

   **RESPONSE:** Aside from RH's x-rays, which will be produced (see response to No. 7 above), the only responsive documents have already been produced. *See* MEAVE 1661-1663.

9. Bates 1777-1786 are blank. Please provide copies of these pages.

   **RESPONSE:** MEAVE 1777-1786, which are blank except for an MGH header and sequential page numbers, have been produced by the government as they were produced by MGH.

10. Bates 1708-1709 reference an insurance adjuster. We also understand that certain crewmembers have received settlements. Please provide us with all statements of crewmembers made in connection to insurance claims and all documents related to any settlements entered into by crewmembers.

   **RESPONSE:** The government objects to the request to produce statements at this time. The government is unaware of any settlements entered into by any crewmembers.

11. The government seized Mr. Meave Vazquez' cellphone. If a search of the phone occurred, please provide a copy of the search warrant. If no search warrant was obtained please indicate that. Additionally, please provide us with any extraction report or other forensic report of this cellphone.

    **RESPONSE:** No search warrant was obtained and no search was conducted.

12. The government also seized several other cellphones – Bates 412, Items 20 & 23; Bates 865-870; 924; 925 – please provide all reports including extraction reports for these cellphones.

    **RESPONSE:** The government objects to this request.

13. Bates 928-930 is a diagram reflecting where certain seized items were found. The diagram appears to be a seven page document for which only three pages were produced. Please produce the missing pages. The diagram is also missing an indication as to where items 22-28 were located on the diagram. Please produce the location where these items were found.

    **RESPONSE:** The diagram is three pages, not seven. The government will produce FD 302 Serial 13, which identifies where on the diagram items 22-28 were located.

14. Bates 1262-1269 are photographs of the Billy Haver's rigging and antennae. The coversheet for the photographs is missing, and as a result, the identification of the photographer has not been produced. Please produce this information.

    **RESPONSE:** FBI Special Agent Dale Wengler took these photographs on September 24, 2018.

15. Bates 1285 contains radio distress calls. The calls do not contain date and time information. Please produce this information.

    **RESPONSE:** The government will produce this information.

16. Bates 1333-1362 is a transcript of the Channel 16 emergency calls from Bates 1285. The transcript contains text of conversation that has not been produced in audio form. Therefore, Bates 1285 produced to us is not complete. Please produce the entirety of the audio associated with the distress calls.

    **RESPONSE:** Please advise which portion of the transcript you contend has not been produced in audio form.

17. All reports regarding investigation into Mr. Meave Vazquez' social media accounts including but not limited to Facebook, Instagram or other accounts.

    **RESPONSE:** No such investigation was performed.

18. You provided a copy of the recorded interrogation of Mr. Meave Vazquez. During this interrogation, he signs a Rosario waiver. Please provide a copy of the Rosario waiver.

    **RESPONSE:** The government will produce the requested document.

19. Mr. Meave Vazquez was held at the Brookline Police Department from on or about September 23 – 26. Please provide any reports prepared by the Brookline Police Department or any other law enforcement agency regarding this time period.

    **RESPONSE:** The government will produce the requested document.

20. Mr. Meave Vazquez was detained on the Billy Haver [sic: should be the Coast Guard cutter Legare] for a significant period of time before it arrived in Boston. Please produce any oral statements made by Mr. Meave Vazquez during this or any other period. Moreover, In Paragraph 1d of your December 20, 2018 discovery letter you summarize numerous statements allegedly made by Mr. Meave Vazquez, please provide us with all reports and hand written notes that pertain to these alleged statements.

    **RESPONSE:** The defendant did not make any oral statements during this time period other than those described in paragraph 1(d) of the government's December 20, 2018 discovery letter. To be more specific:

    - USCG Officer A.C. reported asking if the defendant was injured and the defendant responding that he was not. A.C. asked the defendant if he had his ID on board the Captain Billy Haver; the defendant replied that it was in the crew's berthing.

    - USCG Officer M.S. reported that, as he handcuffed the defendant, the defendant said, "I am not a criminal." M.S. asked the defendant if he had ID and where it was located. The defendant replied that his passport was located in the top port side rack.

    - USCG Officer J.C.T. reported that, after the defendant was handcuffed, he saw that the defendant had a piece of clothing wrapped around his forehead and had blood on his face and shirt. J.C.T. asked the defendant if he had a wound on his forehead and if it was a significant injury. The defendant said he had stopped the bleeding and was okay.

    - USCG Officer D.P.C. reported that he and USCG Health Services Technician C.H. evaluated the defendant when the defendant was brought aboard the cutter Legare. D.P.C. noticed a few head wounds and a few scratches on the defendant's right arm. When asked how he had received the head wounds, the defendant said that his captain hit him over the head with a metal bar.

    - USCG Health Services Technician C.H. reported that the defendant was very cooperative and calm after he was brought aboard the Legare. C.H. reported the following: "During the time Mr. Meave was under my care he admitted to being

struck, in the head, by the fishing vessels captain. He states he was struck multiple times by a metal bar. He also stated understanding as to why the ship's captain struck him, he stated it was due to the current situation. Mr. Meave claims to have gone to the ship's captain to inform him to call the Coast Guard and that is when the captain struck him with the metal bar. Upon being struck Mr. Meave states he got away from the captain and climbed the rigging where he stayed until the CGC Legare boarding team showed up."

The government objects to defendant's request for reports and notes.

21. Bates 396 reflects the Mein Schiff had telephone contact with the Billy Haver. Please provide us with a copy of the recording of this call. Bates 397 references additional calls by the Mein Schiff one of which was to the Fleet Captain Pagonis. Please provide a copy of the recording of this call.

**RESPONSE:** MEAVE 396 describes radio communications on Channel 16 that were heard by the Coast Guard and various vessels, including the Mein Schiff 6 and the Captain Billy Haver. It does not describe a communication solely between the Mein Schiff 6 and the Captain Billy Haver. The government has produced the audio file of the communications described in MEAVE 396. MEAVE 397 references a telephone call from the Captain of the Mein Schiff 6 to Fleet Captain Pagonis. The government does not possess a recording of this telephone call and does not know whether it was recorded.

22. Bates 924 references the collection of stained bedding. Please provide all documents pertaining to any forensic testing done on this item as well as all documents pertaining to the chain of custody of this item. If this item has not been tested please indicate that.

**RESPONSE:** The government will produce documents relating to the chain of custody for this item. Forensic testing has not been performed.

23. Bates 409 references the collection of a black hooded sweatshirt, Beanie hat, purple bandana, and a hammer. Please provide all documents pertaining to any forensic testing done on these items as well as all documents pertaining to the chain of custody of these items. If these items have not been tested please indicate that.

**RESPONSE:** The government will produce documents relating to the chain of custody for these items. Forensic testing has not been performed.

24. Bates 1092, 1099, and 1111 indicate that rubber boots, gray sweatpants, and a white t-shirt were collected. Bates 927 indicates these three items were brought to the FBI's ERT Facility to dry before testing. Please provide all documents pertaining to any forensic testing done on these items as well as all documents pertaining to the chain of custody of these items. If the items have not been tested please indicate that.

**RESPONSE:** The government will produce documents relating to the chain of custody for these items. Forensic testing has not been performed.

25. Bates 1143 – 1147 appear to be photographs of alleged narcotics. Please provide all documents pertaining to any forensic testing done on this item as well as all documents pertaining to the chain of custody of this item. If this item has not been tested please indicate that.

    **RESPONSE:** The government will produce the requested documentation.

26. Bates 306 and 315 reference the collection of Cavity blood, urine, bile, and vitreous humor and that these items were submitted for toxicology. We have only received results for heart blood and femoral blood. Please provide all toxicology and forensic testing done on these collected items. If these items have not been tested please indicate that.

    **RESPONSE:** The government has produced the results of all tests performed on samples collected during the autopsy. It is the government's understanding that the Medical Examiner's office has retained some samples in the event that testing is later requested.

27. Bates 306 indicates that postmortem X-Rays were done. These have not been produced. Please produce them.

    **RESPONSE:** The government has requested these from the Medical Examiner's office and will produce them upon receipt.

28. Bates 404 reflects the FBI took spherical photographs. I do not believe these have been produced. Kindly produce these photographs.

    **RESPONSE:** The government will produce these photographs.

29. Bates 408 reflects that a Presumptive Hemastix test was conducted. Please provide any reports pertaining to this testing and any other testing performed on items seized from the Billy Haver.

    **RESPONSE:** The government will produce all reports pertaining to testing of items seized from the Captain Billy Haver. The Presumptive Hemastix is a field test that does not produce a report.

30. The Fishing Vessel Master James appears to have arrived at the Billy Haver before the Coast Guard or Mein Schiff. Please provide any reports regarding interviews of the crew of the Master James.

    **RESPONSE:** The government objects to this request. Any potentially exculpatory information provided by these witnesses was identified in section G(1)(e) of the government's letter dated December 20, 2018.

31. Bates 1656 – 1658 pertains to an interview of TS. In the interview TS talks about an individual who provided exculpatory evidence. This person's name is redacted. The initials are TD. Please provide any reports pertaining to any interviews or conversations between TD and law enforcement and please identify TD by his/her full name. Further, this report identifies two additional individuals with exculpatory evidence – EJ and DL.

Please provide any reports pertaining to any interviews or conversations between EJ and/or DL and law enforcement and please identify these individuals by their full name. Finally, TS indicates that other crewmembers used drugs and that Mr. Meave Vazquez purchased drugs from a fellow crewmember. Please provide any reports or statements that reflect that crewmembers of the Billy Haver were using drugs during the trip at issue or tested positive for drug use.

**RESPONSE:** The government will provide the full names of TD, EJ, and DL. The government has no reports of interviews/conversations between law enforcement and either TD, EJ, or DL. The government is unaware of any reports reflecting that any crewmembers tested positive for drug use. Section G(1)(g) of the government's letter dated December 20, 2018, identifies four crewmembers who have stated that, on September 23, 2018, they saw the defendant exhibiting symptoms than can be associated with drug withdrawal. The government objects to the defendant's request for reports or statements that reflect that any crewmembers were using drugs.

32. Bates 2236 – 2238 are records for a satellite phone used on the Billy Haver. This document is either illegible or redacted. Please provide a legible and unredacted copy of this document.

    **RESPONSE:** The government will provide an unredacted version of this document in hard copy form. The original is difficult to read due to its having been faxed.

33. Bates 2244 contains audio recording of conversations between the Billy Haver and the Coast Guard. The audio indicates additional phone calls would occur every 30 minutes as the Coast Guard escorted the Billy Haver to Boston. The audio of these additional calls were not produced. Please produce the audio of these calls.

    **RESPONSE:** No responsive materials exist. On the recording a petty officer states that calls would occur every 30 minutes but the calls did not happen because the Command Center was too busy.

34. Any documents or reports regarding whether the EPIRB was activated on the date of the alleged homicide.

    **RESPONSE:** The government will produce the requested report.

Sincerely,

ANDREW E. LELLING
United States Attorney

By:   */s/ Christine J. Wichers*
      LAURA J. KAPLAN
      CHRISTINE J. WICHERS
      Assistant United States Attorneys